# UNITED STATES DISTRICT COURT

For the

District of Arizona

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| | ) | |
| The forensic images of the computer | ) | Case No.   21-4358mb |
| belonging to James McCarty | ) | |
| | ) | |

## SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer of an attorney for the government requests the search of the following person or property located in the _____ District of _____ Arizona _____ *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A**
The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seized the person or property.

**YOU ARE COMMANDED** to executed this warrant on or before   November 30, 2021
   *(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10 p.m.   ☐ at any time in the day or night as I find reasonable cause has been established

Unless delayed notice is authorized below, you must give a copy of the search warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Any United States Magistrate Judge _____ On Duty in the District of Arizona _____.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for the delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.

☐ until, the facts justifying, the later specific date of _____.

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2021.11.16 13:16:17 -07'00'

Date and time issued:   _____          _____
                                                                      *Judge's signature*

City and state:   ____ Flagstaff, Arizona ____          Hon. Camille D. Bibles, United States Magistrate Judge
                                                                      *Printed name and title*

AO 93 (Rev. 01/09) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: 21-4358mb | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| Certification |
|---|

        I declare under penalty of perjury that this inventory is correct and was returned along with the original
warrant to the designated judge.


Date:_____                    _____
                                                              *Executing officer's signature*

                                                         _____
                                                              *Printed name and title*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT A**

**DESCRIPTION OF THE PERSON, PROPERTY, AND ITEMS TO BE SEARCHED**

**PROPERTY**:

The forensic image of the computer belonging to James McCarty are more fully described as:

The forensic image ".E01" files processed by FBI – Los Angeles for the HP Desktop s/n: 4CI6380ZRY, evidence item number 1B4, stored on a Seagate Barracuda Hard Disk Drive, 2 TB, s/n 5YD2DLCJ, containing DELA1, copy of image of 1B4, currently located at the FBI, Flagstaff, Arizona.

**ITEMS:**

Search for all items listed within ATTACHMENT B.

**ATTACHMENT B**

**ITEMS TO BE SEARCHED AND SEIZED**

1.      Images of child pornography and files containing images of child pornography in any form wherever it may be stored or found including:

        a.      Motion pictures, films, videos, and other recordings of visual depictions of child pornography.

2.      Information, correspondence, records, documents or other materials pertaining to the possession, receipt or distribution of child pornography, that were transmitted or received using computer, some other facility or means of interstate or foreign commerce, common carrier, of the U.S. mail including:

        a.      Correspondence including electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, by computer, of child pornography;

        b.      Ledgers and records bearing on the productions, reproduction, receipt, shipment, orders, requests, trades, purchases or transactions of any kind involving the transmission through interstate or foreign commerce, including by U.S. mail or by computer of child pornography;

        c.      Records, documents, or materials, including address books, mailing lists, supplier lists, mailing address labels, and documents and records pertaining to the preparation, purchase and acquisition of names or lists of names to be used in connections with the purchase, sale, trade or transmission of child pornography, through interstate commerce including by U.S. mail or by computer;

        d.      Records, documents or materials, including address books, names and lists of names and addresses of minors visually depicted in child pornography; and

        e.      Records of Internet usage, including user names and e-mail addresses and identities assumed for the purposes of communication on the Internet to purchase, sell, trade, transmit or acquire child pornography.   These records may include ISP records, i.e., billing and subscriber records, chat room logs, e-mail messages and include electronic files in a computer and on other data storage mediums, including CDs or DVDs.

3.    Credit card information which evidences ownership or use of the computer equipment found in the above residence, including payment for Internet access and computers or electronic media or other storage devices, disks, CD-ROMS, or similar containers for electronic evidence.

4.    Any information otherwise called for by this warrant:

    a.    Evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved usernames and passwords, documents, and browsing history;

    b.    Evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software;

    c.    Evidence of the lack of such malicious software;

    d.    Evidence of the attachment to the COMPUTER of other storage devices, disks, CD-ROMS, or similar containers for electronic evidence;

    e.    Evidence of the times the COMPUTER was used; and

    f.    Passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER.

# UNITED STATES DISTRICT COURT

for the

## District of Arizona

| | |
|---|---|
| In the Matter of the Search of | ) |
| | ) |
| The forensic images of the computer belonging to James McCarty | ) Case No.   21-4358mb |
| | ) |
| | ) |
| | ) |

## APPLICATION FOR A SEARCH WARRANT

I, Special Agent Dawn A. Martin, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the District of Arizona.

**SEE ATTACHMENT A**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of

18 U.S.C. §2252(a)(4)(B) – Sexual Exploitation of Minors

☒ Continued on the attached sheet: (see attached affidavit) further, the affidavit in support of this Search Warrant is herein incorporated by reference.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103 A, the basis of which is set forth on the attached sheet.

Date: 11/15/21

Reviewed by AUSA: Brett A. Day  *BDay*

Sworn to and signed electronically.

Date: November 16, 2021

City and state:          Flagstaff, Arizona

_____
*Applicant's signature*

Dawn A Martin, Special Agent, FBI
*Printed name and title*

Camille D. Bibles   Digitally signed by Camille D. Bibles
Date: 2021.11.16 13:15:45 -07'00'
_____
*Judge's signature*

Hon. Camille D. Bibles, United States Magistrate Judge
*Printed name and title*



**SCANNED**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT A**

**DESCRIPTION OF THE PERSON, PROPERTY, AND ITEMS TO BE SEARCHED**

**PROPERTY**:

The forensic image of the computer belonging to James McCarty are more fully described as:

The forensic image ".E01" files processed by FBI – Los Angeles for the HP Desktop s/n: 4CI6380ZRY, evidence item number 1B4, stored on a Seagate Barracuda Hard Disk Drive, 2 TB, s/n 5YD2DLCJ, containing DELA1, copy of image of 1B4, currently located at the FBI, Flagstaff, Arizona.

**ITEMS:**

Search for all items listed within ATTACHMENT B.

**ATTACHMENT B**

**ITEMS TO BE SEARCHED AND SEIZED**

1.  Images of child pornography and files containing images of child pornography in any form wherever it may be stored or found including:

    a.  Motion pictures, films, videos, and other recordings of visual depictions of child pornography.

2.  Information, correspondence, records, documents or other materials pertaining to the possession, receipt or distribution of child pornography, that were transmitted or received using computer, some other facility or means of interstate or foreign commerce, common carrier, of the U.S. mail including:

    a.  Correspondence including electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, by computer, of child pornography;

    b.  Ledgers and records bearing on the productions, reproduction, receipt, shipment, orders, requests, trades, purchases or transactions of any kind involving the transmission through interstate or foreign commerce, including by U.S. mail or by computer of child pornography;

    c.  Records, documents, or materials, including address books, mailing lists, supplier lists, mailing address labels, and documents and records pertaining to the preparation, purchase and acquisition of names or lists of names to be used in connections with the purchase, sale, trade or transmission of child pornography, through interstate commerce including by U.S. mail or by computer;

    d.  Records, documents or materials, including address books, names and lists of names and addresses of minors visually depicted in child pornography; and

    e.  Records of Internet usage, including user names and e-mail addresses and identities assumed for the purposes of communication on the Internet to purchase, sell, trade, transmit or acquire child pornography.  These records may include ISP records, i.e., billing and subscriber records, chat room logs, e-mail messages and include electronic files in a computer and on other data storage mediums, including CDs or DVDs.

3.    Credit card information which evidences ownership or use of the computer equipment found in the above residence, including payment for Internet access and computers or electronic media or other storage devices, disks, CD-ROMS, or similar containers for electronic evidence.

4.    Any information otherwise called for by this warrant:

a.    Evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved usernames and passwords, documents, and browsing history;

b.    Evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software;

c.    Evidence of the lack of such malicious software;

d.    Evidence of the attachment to the COMPUTER of other storage devices, disks, CD-ROMS, or similar containers for electronic evidence;

e.    Evidence of the times the COMPUTER was used; and

f.    Passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

**AFFIDAVIT IN SUPPORT OF**

**AN APPLICATION FOR A SEARCH WARRANT**

IN THE MATTER OF THE SEARCH OF           )

The forensic images of the computer        )

belonging to James McCarty                     )

Your affiant, Dawn A Martin, a Special Agent with Federal Bureau of Investigation (FBI), being duly sworn, deposes and states as follows:

**INTRODUCTION**

The facts of this case, as more fully detailed herein, are (1) on December 17, 2020, a search warrant was served at the address of James McCarty, in Kayenta, Arizona, related to an FBI – Los Angeles investigation into multiple swatting incidents.   During the execution of that search warrant James McCarty's computer was seized and a forensic image of the computer was subsequently created. (2) On March 8, 2021, a search warrant was served on Apple for the contents of James McCarty's Apple account, related to an FBI – Oklahoma City investigation into a swatting incident at Vinita High School. (3) During the review of James McCarty's Apple account, videos of child pornography were found.   I am requesting a search warrant to search the forensic image of James McCarty's computer, known as an .E01 file, seized on December 17, 2020, to locate child pornography.

**PRELIMINARY BACKGROUND INFORMATION**

1.      I, Dawn A Martin, have been employed as a Special Agent of the Federal Bureau of Investigation since April of 2004, and am currently assigned to the Phoenix Field Office, Flagstaff Resident Agency.   I have been assigned to conduct investigations pursuant to the FBI's Innocent Images National Initiative (IINI), which focuses on crimes where computers and the Internet are used in the sexual exploitation of children.   I have received basic and on-the-job training in the investigation of cases involving the sexual

1   exploitation of children.   The statements contained in this Affidavit are based on my experience and

2   background as a Special Agent and on information provided by other law enforcement agents.   As a federal

3   agent, I am authorized to investigate violations of United States laws and to execute warrants issued under the

4   authority of the United States.

5        2.        The purpose of this application is to seize evidence, more particularly described in Attachment

6   B, of violations of 18 U.S.C. §§ 2252(a)(4)(B), which makes it a crime to possess, or knowingly access with

7   intent to view, child pornography.

8        3.        Because this Affidavit is being submitted for the limited purpose of securing a search warrant,

9   I have not included each and every fact known to me or the FBI concerning this investigation.   I have set forth

10   only those facts that I believe are necessary to establish probable cause that evidence of violations of 18 U.S.C.

11   §§ 2252(a)(4)(B) is located on the computer belonging to James McCarty, more particularly described in

12   Attachment A.

13                            **DEFINITIONS**

14        4.        The following non-exhaustive list of definitions applies to this Affidavit and Attachments A

15   and B (collectively referred to as "warrant"):

16                a.        "Child Pornography" is any visual depiction of sexually explicit conduct where (a) the

17                production of the visual depiction involved the use of a minor engaged in sexually explicit

18                conduct, (b) the visual depiction is a digital image, computer image, or computer-generated

19                image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct,

20                or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable

21                minor is engaged in sexually explicit conduct. See 18 U.S.C. § 2256(8).

22                b.        "Child erotica" means materials or items that are sexually arousing to persons having a

23                sexual interest in minors, but that are not, in and of themselves, obscene or illegal.   In contrast

24                to "child pornography," this material does not necessarily depict minors in sexually explicit

25                poses or positions.   Some of the more common types of child erotica include photographs that

26                are not sexually explicit, drawings, sketches, fantasy writing, and diaries.   See Kenneth V.

27                Lanning, Child Molesters: A Behavioral Analysis (2001) at 65.   Federal courts have recognized

28

the evidentiary value of child erotica and its admissibility in child pornography cases.  E.g., United States v. Cross, 928 F.2d 1030, 1050 (11th Cir. 1991)(testimony about persons deriving sexual satisfaction from and collecting non-sexual photographs of children admissible to show intent and explain actions of defendant); United States v. Caldwell, 181 F.3d 104, 1999 WL 238655, *7 (6th Cir. 1999)(unpublished)(child erotica admissible under Federal Rule of Evidence 404(b) to show knowledge or intent)(table case).

c.      "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image.  See also 18 U.S.C. § 2256(5).

d.      "Minor" means any person under the age of eighteen years or who appears to be under the age of eighteen years.  See also 18 U.S.C. § 2256(1).

e.      "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, genital-anal, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons.  See also 18 U.S.C. § 2256(2).

f.      "Computer" refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."  See also 18 U.S.C. § 1030(e)(1).

g.      "Computer hardware" consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data.  Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices), peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including

physical keys and locks).

h.      "Computer software" is digital information that can be interpreted by a computer and any of its related components to direct the way they work.  Computer software is stored in electronic, magnetic or other digital form.  It commonly includes programs to run operating systems, applications and utilities.

i.      "Computer-related documentation" consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software or other related items.

j.      "Computer passwords and data security devices" consist of information or items designed to restrict access to or hide computer software, documentation or data.  Data security devices may consist of hardware, software or other programming code.  A password (a string of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices.  Data security hardware may include encryption devices, chips and circuit boards.  Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched.  Data security software or code may also encrypt, compress, hide or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

k.      "Internet Service Providers" (ISPs) are commercial organizations, which provide individuals and businesses access to the Internet.  ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage and co-location of computers and other communications equipment.  ISPs can offer various means to access the Internet, including telephone based dial-up, broadband based access via a digital subscriber line (DSL) or cable television, dedicated circuits, or satellite based subscription.  ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth that the connection supports.  Many ISPs assign each subscriber an account name such as a user name or screen name, an e-mail address, and an e-mail mailbox and the subscriber typically creates a password for the account.  By using a computer equipped with a telephone or cable modem,

the subscriber can establish communication with an ISP over a telephone line or through a cable system and can access the Internet by using his or her account name and password or in the event that the router is wireless and unsecured, can be accessed by anyone within close proximity to the physical location of the wireless router.

l.     "ISP records" are records maintained by ISPs pertaining to their subscribers (regardless of whether those subscribers are individuals or entities).   These records may include account application information, subscriber and billing information, account access information (often times in the form of log files), e-mail communications, information concerning content uploaded and/or stored on or via the ISP's servers, and other information, which may be stored both in computer data format and in written or printed record format.   ISPs reserve and/or maintain computer disk storage space on their computer system for their subscribers' use.   This service by ISPs allows for both temporary and long-term storage of electronic communications and many other types of electronic data and files.

m.     "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet.   IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet.   IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

n.     "Records," "documents," and "materials" include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic

dialers, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

o.      "Digital device" includes any electronic system or device capable of storing and/or processing data in digital form, including the following:   central processing units; laptop or notebook computers; PDAs; wireless communication devices such as telephone paging devices, beepers and mobile telephones; peripheral input/output devices such as keyboards, printers, scanners, plotters, monitors and drives intended for removable media; related communications devices such as modems, cables and connections; storage media such as hard disk drives, floppy disks, compact disks, magnetic tapes and memory chips; and security devices.

p.      "Image" or "copy" refers to an accurate reproduction of information contained on an original physical item, independent of the electronic storage device.   "Imaging" or "copying" maintains contents, but attributes may change during the reproduction.

q.      "Hash value" refers to a mathematical algorithm generated against data to produce a numeric value representative of that data.   A hash value may be run on media to find the precise data from which the value was generated.   Hash values cannot be used to find other data.

r.      "Compressed file" refers to a file that has been reduced in size through a compression algorithm to save disk space. The act of compressing a file will make it unreadable to most programs until the file is uncompressed.

s.      "Domain Name" refers to the common, easy to remember names associated with an Internet Protocol address.   For example, a domain name of www.usdoj.gov refers to the Internet Protocol address of 149.101.1.32.   Domain names are typically strings of alphanumeric characters with each level delimited by a period.   Each level, read backwards - from right to left- further identifies parts of an organization.   Examples of first level or top-level domains are typically .com for commercial organizations, .gov for the governmental organizations, .org for organizations, and .edu for educational organizations. Second level names will further identify the organization.   For example, usdoj.gov further identifies the United States governmental agency to be the Department of Justice.   Additional

levels may exist as needed until each machine is uniquely identifiable. For example, www.usdoj.gov identifies the world wide web server located at the United States Department of Justice, which is part of the United States government.

t.      "Log files" are records automatically produced by computer programs to document electronic events that occur on computers. Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors. Logs are often named based on the types of information they contain. For example, web logs contain specific information about when a website was accessed by remote computers; access logs list specific information about when a computer was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

u.      "Hyperlink" refers to an item on a web page which, when selected, transfers the user directly to another location in a hypertext document or to some other web page.

v.      "Website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

w.      "Uniform Resource Locator" or Universal Resource Locator" (URL) is the unique address for a file that is accessible on the Internet. For example, a common way to get to a website is to enter the URL of the website's home page file in the Web browser's address line. Additionally, any file within that website can be specified with a URL. The URL contains the name of the protocol to be used to access the file resource, a domain name that identifies a specific computer on the Internet, and a pathname, a hierarchical description that specifies the location of a file in that computer.

x.      "Remote Storage" refers to offsite data storage, where files are stored online, on a server or data storage device located elsewhere. Remote storage is typically accessible only with a user ID and password and can be accessed from any computer with Internet access. Often, remote storage locations can be mapped as a folder or drive on a computer where they can be

accessed and used just like any other file, drive or device connected to the computer.   Typically, this mapping is severed when a computer is logged off or powered off.   Many remote storage service providers store data in an encrypted format, where the data can only be accessed with the user's user ID and password.   In such cases, the service provider would not be able to access the data, or provide it to law enforcement, in an unencrypted form.   If a remote storage location is attached or mapped to a computer, copying the data on-scene may be the only way to access the data in the future.

## BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY AND ONLINE CHILD EXPLOITATION

5.     Based upon my knowledge, training and experience in online child exploitation and child pornography investigations, as well as the experience and training of other law enforcement officers with whom I have had discussions, I have learned the following:

a.     Computers and computer technology have revolutionized the way in which child pornography is produced, distributed, stored and communicated as a commodity and a further tool of online child exploitation.

b.     Individuals can transfer photographs from a camera onto a computer-readable format with a variety of devices, including scanners, memory card readers, or directly from digital cameras.

c.     Modems allow computers to connect to another computer through the use of telephone, cable, or wireless connection.   Electronic contact can be made to literally millions of computers around the world.

d.     The capability of a computer to store images in digital form makes the computer itself an ideal repository for child pornography.   As explained further below, the storage capacity of electronic media used in home computers has increased tremendously within the last several years.   These drives can store extreme amounts of visual images at very high resolution.

e.     The Internet, the World Wide Web and other Internet components afford individuals many different and relatively secure and anonymous venues for obtaining, viewing and trading

child pornography or for communicating with others to do so or to entice children.

f.       Individuals can use online resources to retrieve, store and share child pornography, including services offered by Internet Portals such as Google, America Online (AOL), Yahoo! and Hotmail, among others.   Online services allow a user to set up an account providing e-mail and instant messaging services, as well as electronic storage of computer files in any variety of formats.   A user can set up an online storage account from any computer with access to the Internet.   Evidence of such online storage of child pornography is often found on the user's computer.   And even in cases where online storage is used, evidence of child pornography can be found on the user's computer in most cases.

g.       As is the case with most digital technology, computer communications can be saved or stored on hardware and computer storage media use for these purposes.   Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files.   However, digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others).   In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used.   Such information is often maintained for very long periods of time until overwritten by other data.

h.       The interaction between software applications and the computer operating systems often results in material obtained from the Internet being stored multiple times, and even in different locations, on a computer hard drive without the user's knowledge.   Even if the computer user is sophisticated and understands this automatic storage of information on his/her computer's hard drive, attempts at deleting the material often fail because the material may be automatically stored multiple times and in multiple locations within the computer media.   As a result, digital data that may have evidentiary value to this investigation could exist in the user's computer media despite, and long after, attempts at deleting it.   A thorough search of this media could

1    uncover evidence of receipt, distribution and possession of child pornography.

2         i.      Data that exists on a computer is particularly resilient to deletion.   Computer files or

3    remnants of such files can be recovered months or even years after they have been downloaded

4    onto a hard drive, deleted or viewed via the Internet.   Electronic files downloaded to a hard

5    drive can be stored for years at little to no cost.   Even when such files have been deleted, they

6    can be recovered months or years later using readily available forensic tools.   When a person

7    "deletes" a file on a home computer, the data contained in the file does not actually disappear,

8    rather, the data remains on the hard drive until it is overwritten by new data.   Therefore, deleted

9    files or remnants of deleted files, may reside in free space or slack space – that is, in space on

10   the hard drive that is not allocated to an active file or that is unused after a file has been allocated

11   to a set block of storage space for long periods of time before they are overwritten.   In addition,

12   a computer's operating system may also keep a record of deleted data in a "swap" or "recovery"

13   file.   Similarly, files that have been viewed via the Internet are automatically downloaded into

14   a temporary Internet directory or cache.   The browser typically maintains a fixed amount of

15   hard drive space devoted to these files, and the files are only overwritten as they are replaced

16   with more recently viewed Internet pages.   Thus, the ability to retrieve residue of an electronic

17   file from a hard drive depends less on when the file was downloaded or viewed and more on a

18   particular user's operating system, storage capacity, and computer habits.

19      **BACKGROUND ON COMPUTERS AND EVIDENCE ASSESSMENT PROCESS IN**

20       **CHILD PORNOGRAPHY AND CHILD EXPLOITATION INVESTIGATIONS**

21       6.      Based on my knowledge, training, and experience, as well as information related to me by

22   agents and others involved in the forensic examination of digital devices, I know that segregating information

23   before commencement of the review of digital evidence by the examining agent is inconsistent with the

24   evidence assessment process in child pornography and online child exploitation investigations.   This is true in

25   part because the items to be searched will not only contain child pornography but also will contain the identity

26   of the user/possessor of the child pornography as well as evidence as to the programs and software used to

27   obtain the child pornography, which may be located throughout the areas to be searched.

28

a.      As further described in Attachment B, this warrant seeks permission to locate not only computer files that might serve as direct evidence of the crimes described in the warrant, but also for evidence that establishes how computers were used, the purpose of their use, and who used them.   Additionally, the warrant seeks information about the possible location of other evidence.

b.      As described above and in Attachment B, this application seeks permission to search and seize certain records that might be found in the computer belonging to James McCarty. One form in which the records might be found is stored on a computer's hard drive, or other electronic media.   Some of these electronic records might take the form of files, documents, and other data that is user-generated.   Some of these electronic records, as explained below, might take a form that becomes meaningful only upon forensic analysis.

c.      Although some of the records called for by this affidavit might be found in the form of user-generated documents (such as word processor, picture and movie files), computer hard drives can contain other forms of electronic evidence that are not user-generated.   In particular, a computer hard drive may contain records of how a computer has been used, the purposes for which it was used and who has used these records, as described further in the attachments.   For instance, based upon my knowledge, training, and experience, as well as information related to me by agents and others involved in the forensic examination of digital devices, I know the following:

      i.      Data on the hard drive not currently associated with any file can provide evidence of a file that was once on the hard drive but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

      ii.     Virtual memory paging systems can leave traces of information on the hard drive that show what tasks and processes on the computer were recently in use.

      iii.    Web browsers, e-mail programs and chat programs store configuration information on the hard drive that can reveal information such as online

nicknames and passwords.

    iv.    Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices and the times the computer was is use.

    v.    Computer file systems can record information about the dates files were created and the sequence in which they were created.   This information may be evidence of a crime or indicate the existence and location of evidence in other locations on the hard drive.

d.    Further, in finding evidence of how a computer has been used, the purposes for which it was used and who has used it, sometimes it is necessary to establish that a particular thing is not present on a hard drive or that a particular person (in the case of a multi-user computer) was not a user of the computer during the time(s) of the criminal activity.   For instance, based upon my knowledge, training and experience, as well as information related to me by agents and others involved in the forensic examination of digital devices, I know that when a computer has more than one user, files can contain information indicating the dates and times that files were created as well as the sequence in which they were created, and, for example, by reviewing the Index.dat files (a system file that keeps track of historical activity conducted in the Internet Explorer application), whether a user accessed other information close in time to the file creation dates, times and sequences so as to establish user identity and exclude others from computer usage during times related to the criminal activity.

e.    Evidence of how a digital device has been used, what it has been used for and who has used it, may be the absence of particular data on a digital device and requires analysis of the digital device as a whole to demonstrate the absence of particular data.   Evidence of the absence of particular data on a digital device is not segregable from the digital device.

f.    The types of evidence described above may be direct evidence of a crime, indirect evidence of a crime indicating the location of evidence or a space where evidence was once located, contextual evidence identifying a computer user and contextual evidence excluding a

computer user.   All of these types of evidence may indicate ownership, knowledge and intent.

g.       This type of evidence is not "data" that can be segregated, that is, this type of data cannot be abstractly reviewed and filtered by a seizing or imaging agent and then transmitted to investigators.   Rather, evidence of this type is a conclusion, based on a review of all available facts and the application of knowledge about how a computer behaves and how computers are used.   Therefore, contextual information is necessary to understand the evidence described in Attachment A also falls within the scope of the warrant.

### SEARCH METHODOLOGY TO BE EMPLOYED

7.       The search methodology to be employed is as follows:

a.       All computers, computer hardware and any form of electronic storage that could contain evidence described in this warrant was seized for an off-site search for evidence that is described in the attachments of this warrant.   It is anticipated that mirror copies or images of such evidence will be made if the failure to do so could otherwise potentially alter the original evidence.

b.       Consistent with the information provided within this affidavit, contextual information necessary to understand the evidence, to identify the user/possessor of the child pornography, and to establish admissibility of the evidence in subsequent legal proceedings will also be sought by investigative agents.

c.       Additional techniques to be employed in analyzing the seized items will include (1) surveying various file directories and the individual files they contain; (2) opening files to determine their contents; (3) scanning storage areas, (4) performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in this affidavit and its attachments, and (5) performing any other data analysis techniques that may be necessary to locate and retrieve the evidence described in this affidavit and its attachments.

8.       Because it is expected that the computers, computer hardware and any form of electronic storage media may constitute (1) instrumentality of the offense, (2) fruit of criminal activity, (3) contraband, or (4)

1   evidence otherwise unlawfully possessed, it is anticipated that such evidence will not be returned to the owner

2   and that it will be either forfeited or ultimately destroyed in accordance with the law at the conclusion of the

3   case.

4         a.    Because of the large storage capacity as well as the possibility of hidden data within the

5         computers, computer hardware and any form of electronic storage media, it is anticipated that

6         there will be no way to ensure that contraband-free evidence could be returned to the

7         user/possessor of the computer, computer hardware or any form of electronic storage media,

8         without first wiping such evidence clean. Wiping the original evidence clean would mean that

9         the original evidence would be destroyed and thus, would be detrimental to the investigation

10        and prosecution of this case.

11        b.    Further, because investigators cannot anticipate all potential defenses to the offenses in

12        this affidavit, and as such, cannot anticipate the significance of the evidence that has been

13        lawfully seized pursuant to this warrant, it is requested that all seized evidence be retained by

14        law enforcement until the conclusion of legal proceedings or until other order of the court.

15        c.    If after careful inspection investigators determine that such computers, computer

16        hardware and electronic storage media do not contain (1) instrumentality of the offense, (2) fruit

17        of criminal activity, (3) contraband, (4) evidence otherwise unlawfully possessed, or (5)

18        evidence of the person who committed the offense and under what circumstances the offense

19        was committed, then such items seized will be returned.

20  **CHARACTERISTICS OF INDIVIDUALS INVOLVED IN THE**

21  **POSSESSION OF CHILD PORNOGRAPHY**

22      9.    Based upon my knowledge, experience, and training in child pornography investigations, and

23  the training and experience of other law enforcement officers with whom I have had discussions, I know there

24  are certain characteristics common to individuals involved in the possession of child pornography.   Those who

25  possess child pornography:

26        a.    May receive sexual gratification, stimulation, and satisfaction from contact with

27        children; or from fantasies they may have viewing children engaged in sexual activity or in

28

sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b.      May collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media.   Such individuals oftentimes use these materials for their own sexual arousal and gratification.   Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.      Often possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d.      Often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area.   These collections are often maintained for several years and are kept close by, usually at the individual's residence to enable the collector to view the collection, which is valued highly.

e.      May correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f.      Prefer not to be without their child pornography for any prolonged time period.   This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

## DETAILS OF THE INVESTIGATION

10.     "Swatting" is a harassment technique in which individuals falsely report a threat (i.e. a bomb threat, an active shooter, or a hostage situation) to law enforcement in an attempt to provoke an emergency

1   response, including deployment of tactical and emergency service response teams, to the target's address.

2   Depending on the nature of the false threat, law enforcement will often deploy a Special Weapons and Tactics

3   (SWAT) team or bomb squad members.   Swatting can result in the evacuations or lockdowns of schools,

4   businesses or homes.

5          11.     In November 2020, the FBI – Los Angeles initiated an investigation related to several swatting

6   incidents which occurred in October 2020 and November 2020.   Ring LLC, a home security and smart home

7   company owned by Amazon, located in Santa Monica, California, reported multiple incidents of swatting

8   involving the use of Ring smart doorbells.

9          12.     Through IP addresses, email addresses and social media accounts, FBI – Los Angeles identified

10   the possible subject as James McCarty of Kayenta, Arizona.

11          13.     On December 17, 2020, a residential search warrant, issued in the United States District Court

12   for the District of Arizona, pursuant to the Ring smart doorbell swatting incidents, was executed at the residence

13   of James McCarty, located at 295 Canyon Drive, Kayenta, Arizona, 86033.   The computers and digital storage

14   devices seized were sent to FBI – Los Angeles for forensic processing and review.   FBI – Los Angeles made

15   forensic images of all computers and digital storage devices, known as .E01 files.

16          14.     FBI – Los Angeles reviewed the forensic data and determined the HP Desktop s/n:

17   4CI6380ZRY, evidence item number 1B4, was the only digital device McCarty used to instigate the swatting

18   incidents.

19          15.     On December 17, 2020, James McCarty was interviewed.   After being advised of his Miranda

20   rights, McCarty said he had been involved in multiple incidents of swatting, threatening, extortion and stealing

21   online usernames by brute force.   McCarty provided his online username as "aspertaine."

22          16.     In January 2021, FBI – Oklahoma City initiated an investigation related to a swatting incident

23   at Vinita High School.

24          17.     Through the suspect's telephone number, a TextNow voice over internet protocol (VIOP)

25   number, FBI – Oklahoma City determined the username for the TextNow account to be "aspertaine," the same

26   username utilized by James McCarty.

27

28

18.     On March 8, 2021, a search warrant, issued in the United States District Court for the Northern District of Oklahoma, was served on Apple, Inc., for records relating to aspertaine@protonmail.com, for evidence related to an additional swatting incident in Tulsa, Oklahoma.

19.     On March 23, 2021, Apple provided a link to download the encrypted records responsive to the search warrant.   FBI Special Agent Evan Held downloaded and decrypted the records from Apple and placed them onto a Blu-Ray Disk.

20.     On June 1, 2021, SA Held, while reviewing the Apple records, located videos of apparent child pornography.   SA Held described the videos as follows:

    a.  Video approximately 0:13 in duration appearing to depict a prepubescent male engaging in vaginal intercourse with an adult female

    b.  Video approximately 2:17 in duration appearing to depict a prepubescent boy engaged in oral sex.

    c.  A video file with the name "13yold Latina fuck in hotel"

    d.  A video file with the name "14yo British girl[,]"

21.     On June 4, 2021, SA Held obtained an additional search warrant, issued in the United States District Court for the Northern District of Oklahoma, for the Apple records relating to aspertaine@protonmail.com, for evidence related to the possession of child pornography.

22.     After obtaining the search warrant for possession of child pornography, FBI Special Agent Evan Held, continued reviewing the Apple records.   SA Held found the following videos, described as follows:

    a.  Video approximately 1:06 in duration appearing to depict an adult male engaging in vaginal intercourse with a prepubescent female

    b.  Video approximately 0:13 in duration appearing to depict a prepubescent male engaging in vaginal intercourse with an adult female

    c.  Video approximately 2:59 in duration appearing to depict a prepubescent male and female attempting to engage in sexual intercourse. The prepubescent female's vagina is visible at times during the video.

d.  Video approximately 1:02 in duration appearing to depict a prepubescent female and two pre-pubescent males engaging in sexual activity.

e.  Video approximately 2:29 in duration appearing to depict a prepubescent female engaging in vaginal intercourse with an adult male.

f.  Video approximately 2:17 in duration appearing to depict a prepubescent boy engaged in oral sex.

g.  A video file with the name "13yold Latina fuck in hotel"

h.  A video file with the name "14yo British girl"

23.   A check of Accurint for Law Enforcement, a database of public records and commercially available data, reports McCarty moved to Farmington, New Mexico, on July 25, 2021.   McCarty's only known prior permanent residence was in Kayenta, Arizona.

## FORFEITURE

24.   For Chapter 110 child pornography offenses, 18 U.S.C. §§ 2253 and 2254 provide the forfeiture authority. Section 2254 provides for civil forfeiture of the same property subject to criminal forfeiture in Section 2253, as requested in a criminal seizure warrant pursuant to 18 U.S.C. § 981.

25.   Section 2253 provides, in relevant part:

(a) Property subject to criminal forfeiture []-

(1) any visual depiction described in section 2251, 2251A, or 2252, 2252A, 2252B, or 2260 of this chapter, or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped or received in violation of this chapter;

(2) any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such offense, and;

(3) any property, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property.

26.   Pursuant to these Rules, I request immediate forfeiture of any property, including items of electronic evidence, which constitutes, contains, or was used to facilitate a crime involving child pornography

1  or online child exploitation.

2  **CONCLUSION**

3      27.    Based on the foregoing, your affiant respectfully submits there is probable cause to believe that

4  James McCarty was in possession of child pornography, while living in Kayenta, Arizona, in violation of Title

5  18 U.S.C. §§ 2252, which, among other things, makes it a federal crime for any person to produce, possess,

6  receive, or distribute child pornography, and that the property, evidence, fruits and instrumentalities of these

7  offenses, more fully described in Attachment B of this Affidavit, are located on the computer and in the

8  accounts belonging to James McCarty, as more fully described in Attachment A.

9

10

11      Respectfully submitted,

12

13

14      Dawn A Martin

15      Special Agent
    Federal Bureau of Investigation

16  Subscribed and sworn electronically this   16th   of November, 2021.

17  Camille D.   Digitally signed by
    Camille D. Bibles

18  Bibles   Date: 2021.11.16
    13:15:00 -07'00'

19  Honorable Camille D. Bibles

20  United States Magistrate Judge

21

22

23

24

25

26

27

28